**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

_____

| | |
|---|---|
| In re: | Chapter 11 |
| Stephen D. King | BKY 18-71778 |
| Debtor. | |

_____

**MOTION FOR RELIEF FROM AUTOMATIC STAY**
_____

Movants, Dan Skolness, Daljit Sikka, George M. Tadros, Reem Danial, Steven M. Cohan Trustee of the Steven M. Cohan and Jill R. Cohan Joint Revocable Trust created May 11, 2008, Steven M. Cohan, David L. Flod, Edward J. Oertel, John Oertel, Fred John Williams III as Representative of the Estate of Fred John Williams, Jr., Scott Zbikowski and Elizabeth Zbikowski (collectively, the "Movants"), by and through their counsel, submit this motion for relief from the automatic stay.

**FACTS**

The Movants commenced litigation against the Debtor and his related business entity in the Minnesota state court in August 2017, December 2017, and July 2018. Minn. Case Nos. 27-CV-17-18468, 27-CV-17-12183, and 27-CV-18-12250 (the "State Court Litigation"). The

1

Movants' complaints[1] in the State Court Litigation seek recovery against Wits Basin Precious Minerals, Inc. ("Wits Basin") and the Debtor Stephen D. King (the "Debtor" or "King") under exclusively state law theories of breach of contract, fraud in the sale of securities, aiding and abetting liability under Minnesota securities laws, violation of the Minnesota securities act control person liability, common law fraud, and civil theft.[2] As alleged in the complaints, Wits Basin and the Debtor sold Movants worthless promissory notes issued by Wits Basin with a face "value" of over $2 million.[3] King represented that Movants' invested funds would be used to reopen Wits Basin's mine in China – Movants allege that such representations were materially false or misleading.[4]

After more than a year in litigation, certain Movants and Wits Basin and the Debtor were scheduled for jury trial in Minnesota state court on January 7, 2019. In connection with these cases and evidence to be presented at trial, an overwhelming majority of the facts and circumstances arose in Minnesota. For example, Wits Basin and the Debtor made false and misleading representations to the Movants from Wits Basin's offices in downtown Minneapolis and at meetings in the Minneapolis area that induced the Movants to invest in worthless Wits Basin securities.[5] Aside from the Debtor, the key witnesses are the named Movants and Wits Basin's former Chief Financial Officer. All of the witnesses were prepared and expected to appear and testify at the trial in Minnesota. Wits Basin is a

---

[1] 19-04004, ECF No. 1, Ex. A ("Skolness Complaint"); 19-04005, ECF No. 1, Ex. A ("Sikka et al. Complaint"); 19-04006, ECF No. 1, Ex. A ("Cohan et al. Complaint").
[2] Skolness Complaint ¶¶ 64–69, 74–99; Sikka et al. Complaint ¶¶77–181; Cohan et al. Complaint ¶¶146–151; 156–181.
[3] Skolness Complaint ¶ 3; Sikka et al. Complaint ¶ 3; Cohan et al. Complaint ¶ 3.
[4] *See generally*, Skolness Complaint; Sikka et al. Complaint; Cohan et al. Complaint.
[5] Skolness Complaint ¶ 9; Sikka et al. Complaint ¶ 9; Cohan et al. Complaint ¶ 9.

Minnesota corporation.[6] All of the securities sales to Movants were made in Minnesota.[7] All of the depositions were conducted in Minneapolis. The state court trial lawyers are all Minnesota lawyers.

On December 31, 2018, a week before trial, the Debtor filed this bankruptcy case. On January 2, 2019, the Debtor filed a Notice of Removal of the entire litigation, including the claims against the non-debtor Wits Basin, in Minnesota Bankruptcy Court pursuant to 28 U.S.C. § 1334(b).[8] In the Notice of Removal, the Debtor contended that the Removed Cases were a core proceeding.[9] On January 8, 2019, the Debtor filed a Motion to Transfer Venue to the United States Bankruptcy Court for the Northern District of Georgia.[10] On January 16, 2019, Movants filed Motions to Abstain or Remand.[11] On February 6, the Minnesota Bankruptcy Judge denied the Debtor's motion to transfer the case and remanded the case back to Minnesota state court.[12]

On February 5, the Debtor also filed a complaint requesting the court find his debt to the Movants dischargeable.[13] The Movants responded with counter-claims that their claims are non-dischargeable under Bankruptcy Code Sections 523(a)(2)(A), (2)(B), and (4).[14]

---

[6] Skolness Complaint ¶¶10–11; Sikka et al. Complaint ¶ 3; Cohan et al. Complaint ¶¶32, 35–37.
[7] Skolness Complaint ¶¶14–15, 30–31; Cohan et al. Complaint ¶¶14–15, 30–31.
[8] Adv. Pro. 19-04004, ECF No. 1; Adv. Pro. 19-04005, ECF No. 1; Adv. Pro. 19-04006, ECF No. 1.
[9] *Id.*
[10] Adv. Pro. 19-04004, ECF No. 3; Adv. Pro. 19-04005, ECF No. 3; Adv. Pro. 19-04006, ECF No. 3.
[11] Adv. Pro. 19-04004, ECF No. 4; Adv. Pro. 19-04005, ECF No. 4; Adv. Pro. 19-04006, ECF No. 4.
[12] Adv. Pro. 19-04004, ECF Nos. 14, 15; Adv. Pro. 19-04005, ECF Nos. 14, 15; Adv. Pro. 19-04006, ECF Nos. 14, 15.
[13] Adv. Pro. 19-05026, ECF No. 1.
[14] Adv. Pro. 19-05026, ECF No. 8.

# ARGUMENT

Cause exists for relief from the automatic stay under Bankruptcy Code Section 362(d)(1) to allow the Movants to proceed with the State Court Litigation. Section 362(d)(1) provides that stay relief may be granted for "cause." 11 U.S.C. § 362(d)(1). The term "cause" is not defined in the Bankruptcy Code, and therefore it is determined based on case-specific factors: (1) "whether the debtor has acted in bad faith," (2) "the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code," and (3) "pending state court proceedings." *In re Feingold*, 730 F.3d 1268, 1277 (11th Cir. 2013) (internal quotations and citations omitted). Here, these factors weigh heavily in favor of lifting the stay so that the Movants may proceed to act in the State Court Litigation.

### A. The Debtor's Bankruptcy Filing was in Bad Faith

"Although there is no precise test for determining bad faith, courts have recognized factors . . . includ[ing] the timing of the filing of the petition, whether the debtor is financially distressed, whether the petition was filed strictly to circumvent pending litigation, and whether the petition was filed solely to reject an unprofitable contract." *In matter of Shree Meldikrupa Inc.*, 547 B.R. 862, 872 (Bankr. S.D. Ga. 2016) (citing *Barclays–Am./Bus. Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broad., Inc.)*, 871 F.2d 1023, 1026 (11th Cir. 1989)). Here, the Debtor's bankruptcy filing was a thinly disguised effort to avoid the imminent trial and to delay the State Court Litigation. The timing of the Debtor's bankruptcy filing a week before trial is evidence of forum shopping. The Debtor's motives are further evidenced by his priorities at the outset of this case: the Debtor filed his removal of the State Court Litigation before even filing his first day motions. Additionally, the Debtor's monthly operating reports are not indicative of an individual

4

in "financial distress." In just the month of March, the Debtor's income was $38,390.[15] The Debtor spent $9,031 on charitable giving, over $4,000 on travel and entertainment, and transferred $15,000 to his wife for "household expenses."[16] Such behavior does not correlate with "financial distress." Instead, the Debtor's earnings and spending support the conclusion that the Debtor filed this bankruptcy in bad faith to delay and avoid the State Court Litigation in Minnesota. This factor, therefore, weighs in favor of allowing the State Court Litigation to proceed and thus thwarting the Debtor's attempt to abuse the bankruptcy system in order to avoid accountability in Minnesota state court.

### B. Continuing the Automatic Stay Will Impose Substantial Hardships on the Movants that Outweighs Any Hardships on the Debtor

"With regard to the second factor, the Court 'must compare the equities of freeing the creditor from the restraint of the automatic stay so that it may pursue its claim promptly in another forum against the impact that such relief is likely to have on the bankruptcy process.'" *In re Baker*, 14-71600-PMB, 2018 WL 4961656, at *5 (Bankr. N.D. Ga. Oct. 12, 2018) (quoting *In re Irwin*, 457 B.R. 413, 426 (Bankr. E.D. Pa. 2011)). Here, lifting the automatic stay will allow for the resolution of a number of issues between the Debtor and the Movants and will not harm the bankruptcy estate or other creditors.

#### 1. *Lifting the Stay Will Not Interfere with the Bankruptcy Estate*

The Movants will not proceed to enforce any potential judgment against the Debtor without first receiving the permission of this Court. "Where, as here, the plaintiffs have agreed that they will not seek any recovery from estate assets, there is no basis for continuing the

---

[15] ECF 29.
[16] *Id.*

5

automatic stay." *In re Grace Indus, Inc.*, 341 B.R. 399, 405 (Bankr. E.D.N.Y. 2006); *see also In re Todd Shipyards Corp.*, 92 B.R. 600 (Bankr. D. N.J. 1988) ("Since the movants only seek to litigate their claims to the point of judgment and do not seek relief from the stay in order to attach the property of the debtor, such relief does not interfere with the bankruptcy proceedings."). Because the Movants are only seeking to act in the State Court Litigation, without seeking to foreclose or otherwise act upon property of the Debtor's estate, this factor weighs in favor of waiving the automatic stay.

Further, the Debtor is likely to argue, as he did in oral arguments on the Movant's motion for abstention in Minnesota bankruptcy court,[17] that it would harm the bankruptcy estate for the Debtor to hire Minnesota trial counsel. Debtor's counsel has previously argued that it would be impossible for the Debtor to pay a $40,000 retainer for trial counsel.[18] This argument is without merit. As noted above, the Debtor earned close to $40,000 in just one month. Additionally, the Debtor's spending in luxury categories such as travel, entertainment, charitable giving, and household expenses over just two months would be sufficient to fund that allegedly unattainable retainer cited by Debtor's counsel. The Debtor's disingenuous pleas of poverty should not be elevated above the Movants' rights to a fair trial and the Movants should not be forced to bear the financial burden based on the Debtor's choice to conduct substantial business outside of Georgia.

---

[17] *See* Case No. 19-04004, ECF No. 16.
[18] *Id.*

### 2. *Lifting the Stay Will Not Prejudice Other Creditors*

Another factor that supports granting the motion to lift the stay is that the State Court Litigation will not prejudice the interests of other creditors. The other creditors in the bankruptcy will not be harmed by granting the motion because the Movants will not enforce their remedies with respect to the Debtor's property or the estate without further order of this Court. *See Groover Constr.*, 411 B.R. at 465; *In re Loudon*, 284 B.R. 106, 108 (B.A.P. 8th Cir. 2002); *In re G.S. Distribution. Inc.*, 331 B.R. 552, 567-68 (Bankr. S.D.N.Y. 2005) (finding no prejudice to creditors from lifting stay because movant would not be able to enforce judgment without permission of bankruptcy court). The Movants are merely interested in being able to proceed with proving their case in the State Court Litigation, which will help resolve issues in the non-dischargeability action.

The automatic stay is causing significant hardship to the Movants with little corresponding benefit to the Debtor. The Debtor's bankruptcy has denied the Movants the ability to fairly litigate their pending claims in the State Court Litigation. For over five months, the Movants' cases against the Debtor and Wits Basin, which were ready to go to trial, have been at a standstill due to the Debtor's bankruptcy and the automatic stay. The Movants are merely seeking the ability to prove their case and potentially redress the wrongs that have been committed against them. To that end, the Movants would be prejudiced by a further continuance of the Debtor's automatic stay. As noted above, the Movants will not seek to recover any judgment from the Debtor's estate without further permission of this Court.

7

Accordingly, because no harm will befall the Debtor, and because the Movants may effectively be prejudiced by imposing the stay on its actions in the State Court Litigation, a lifting of the stay is appropriate.

> 3. *Lifting the Stay To Allow the Litigation To Proceed Will Resolve a Number of Issues Between the Debtor and the Movants*

The Movants believe that the Debtor's pre-petition actions subject him to a finding of non-dischargeability under Bankruptcy Code Section 523. Allowing the State Court Litigation to proceed will resolve a number of issues between the Debtor and the Movants without requiring the parties to effectively start over in another litigation forum. As noted by the Minnesota bankruptcy judge, this case's dischargeability action does not attempt to establish liability with regard to the underlying claims, it solely attempts to determine the dischargeability.[19] The State Court Litigation, conversely deals with the liability and the establishment of the amount of the claim.[20] Given that the State Court Litigation is already proceeding, judicial economy would be served by allowing determination of underlying liability and the amount of the claim to proceed in state court.

Furthermore, as noted above, the Debtor is central to the State Court Litigation. The Movants would suffer extreme prejudice in the State Court Litigation if forced to proceed without the Debtor. At the very least, continued imposition of the automatic stay would force the Movants to pursue the Debtor in Georgia bankruptcy court while continuing to pursue Debtor's business, Wits Basin, in Minnesota state court and would result in piecemeal litigation. Therefore, judicial economy is best served by lifting the stay in order to allow the exclusively

---

[19] *Id.*
[20] *Id.*

8

state law causes of action arising under Minnesota law to be decided in the state court of Minnesota.

### C. Judicial Efficiency and Fairness Weigh in Favor of Lifting the Automatic Stay

The final factor looks to whether there is pending state court litigation. In this case, this factor weighs heavily in favor of allowing the Movants to continue the State Court Litigation in Minnesota state court. The Movants were prepared to begin trial in Minnesota in January, and were prepared to present evidence and witnesses, the majority of whom were located in Minnesota, the site of defendant Wits Basin's principal place of business. The Movants would incur significant expense in order to hold the trial in Georgia. Additionally, the Minnesota court has a substantial interest in having the matter decided within its borders as the case involves only questions of Minnesota statutory and common law. The majority of the Movants reside in Minnesota, and having to travel to Georgia for the trial would be prohibitive. Defendant's bankruptcy filing, attempt to remove the action, and attempt to transfer venue within a week of trial commencement were blatant attempts at forum shopping. The Movants respectfully request relief from the automatic stay in order to determine the Debtor and Wits Basin's underlying liability on their state law claims in the most efficient and appropriate forum.

### CONCLUSION

For the foregoing reasons, the Movants requests that the Court:

1. Grant the Motion and enter an order terminating all applicable stays, including the automatic stay of 11 U.S.C. §362(a), to the fullest extent necessary to permit the Movants to exercise all of their rights and remedies with respect to the State Court Litigation;

2. Order that stay relief is effective immediately and waive the 10-day stay of Bankruptcy Rule 4001(a)(3); and

3. Grant the Movants such other and further relief to which they may be entitled.

This 23rd day of May, 2019.

/s/ Bradley S. Wolff
Bradley S. Wolff (GA Bar No. 773388)
Swift, Currie, McGhee & Hiers, LLP
The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, GA 30309-3231
Telephone: (404) 874-8800
Facsimile: (404) 888-6199
brad.wolff@swiftcurrie.com

and

**PLEASE COPY**
Phillip J. Ashfield (#0388990)
Brittany M. Michael (#0397592)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: (612) 335-1500
Phillip.Ashfield@stinson.com

**Attorneys for Movants**

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify under penalty of perjury that I am, and at all times hereinafter mentioned, was more than 18 years of age, and that on the 23rd day of May, 2019, I filed the within and foregoing *Motion for Relief from Automatic Stay* via the CM/ECF Document Filing System which automatically sends a service copy via email notification to all counsel of record.

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

/s/ Bradley S. Wolff
Bradley S. Wolff (No. 773388)
Swift, Currie, McGhee & Hiers, LLP
The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, GA 30309-3231
Telephone: (404) 874-8800
Facsimile: (404) 888-6199
brad.wolff@swiftcurrie.com

4011964v.1