### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO.: 18-71778 |
| | : | |
| STEPHEN D. KING, | : | CHAPTER 11 |
| | : | |
| _____Debtor._____ | : | JUDGE HAGENAU |
| | : | |
| COMPOUND PROPERTY | : | |
| MANAGEMENT, LLC, LEONE1, LLC, | : | |
| And R & G CINCY INVESTMENTS, LLC | : | |
| | : | |
| Movants, | : | |
| | : | |
| v. | : | CONTESTED MATTER |
| | : | |
| STEPHEN D. KING, | : | |
| | : | |
| _____Respondent._____ | : | |

### OBJECTION OF COMPOUND PROPERTY MANAGEMENT, LLC,  LEONE1, LLC, AND R & G CINCY INVESTMENTS, LLC TO CONFIRMATION OF CHAPTER 11 PLAN

COMES NOW, Compound Property Management, LLC ("**CPM**"), Leone1, LLC ("**Leone1**"), and R & G Cincy Investments, LLC ("**R & G**") (collectively, "**Ohio Plaintiffs**"), creditors and party in interest in the above styled bankruptcy case, and files this Objection to Confirmation of Chapter 11 Plan (the "**Objection**"). In support of the Objection, the Ohio Plaintiffs show the Court as follows:

### BACKGROUND

1.      The claims of the Ohio Plaintiffs are set forth in their respective Proofs of Claims.[1]

---

[1] CPM filed its proof of claim on April 21, 2020 as Claim Number 25 in the above captioned case; Leone1 filed its proof of claim on April 21, 2020 as Claim Number 26 in the above captioned case; and R & G filed its proof of

2.      The Ohio Fraud Victims are the plaintiffs in a vigorously contested legal action currently pending in the United States District Court for the Southern District of Ohio with multiple defendants including Stephen D. King ("**Debtor**").

3.      The gravamen of the claims of the Ohio Plaintiffs is that Debtor is the kingpin  of a long-running fraudulent real-estate scam where the Debtor, together with other co-defendants and co-conspirators have, defrauded the Ohio Plaintiffs, which are three of hundreds of unsophisticated investor, of significant sums through a litany of fraudulent and unlawful activities.

4.       The Ohio Plaintiffs' case was originally filed on February 1, 2017 in the Common Pleas Court of Hamilton County, Ohio (the "**State Court Case**"), and did not name Debtor personally as a defendant. On February 20, 2019, the Ohio Plaintiffs voluntarily dismissed the State Court Case.

5.      On February 20, 2019, the Ohio Plaintiffs filed a new Complaint (the "**Complaint**") in the United States District Court for the Southern District of Ohio, initiating Case No. 19-CV-000133 (the "**District Court Case**"), and named additional defendants, including but not limited to Debtor.

6.      Each of the Proofs of Claims attach a true and correct copy of the Complaint filed in the District Court Case which sets forth the Ohio Plaintiffs' claims in detail.

7.      Debtor filed the above captioned bankruptcy case (the "**Bankruptcy Case**") on December 31, 2018 ("**Petition Date**").

---

claim as claim number 27 on January 3, 2020 in the above captioned case. Together the proofs of claims of CPM, Leone1, and R & G shall be referred to herein as the "**Proofs of Claims**".

8.      Even though Debtor was fully aware of the claims of the Ohio Plaintiffs, Debtor failed to schedule the claims of the Ohio Plaintiffs, failed to list the Ohio Plaintiffs or any of the potential class members in the District Court Case as creditors, and did not timely provide notice of his Bankruptcy Case to the Ohio Plaintiffs or any other potential class members in the District Court Case.

9.      Instead, Debtor filed a Motion to Dismiss the District Court Case, participated in the Rule 26(f) conference, and participated in a court-conducted settlement conference on October 30, 2019 in the District Court Case.

10.      Only after the District Court Case was not resolved on terms acceptable to Debtor, in November of 2019, did Debtor then provide notice of his Bankruptcy Case to the Ohio Plaintiffs. This was done deliberately to avoid reporting substantial income that Debtor was receiving from his role as kingpin in the alleged fraudulent scam, and to run up the legal fees of counsel for the Ohio Plaintiffs and potential class members in a deliberate effort by Debtor, Debtor's co-defendants in the District Court Case, and their counsel,[2] to frustrate the legal process.

11.      Debtor Stephen D. King was a central actor in carrying out the scheme set forth in the Complaint as the Chief Executive Officer of Build Realty, Inc. ("**Build**"), the company perpetuating the scam. Despite Debtor's contentions, Debtor is fully integrated into the macro- and micro-level decision making regarding Build's future operations, its leadership, and its finances, and Debtor receives a flat fee for every transaction with investors carried out in furtherance of the scheme.

---

[2] Lead counsel for the defendants in the District Court Case is the brother of one of the Defendants.

12.     In October 2018 Debtor testified under oath in a deposition that he was paid a flat fee for each real estate transaction carried out as a part of scam, meaning his compensation is directly linked to how many investors have been victimized. Debtor further stated in this deposition that he believes he has received approximately $250,000.00 to $300,000.00 from his involvement in the Build scam between September of 2016 and October of 2018, none of which has been disclosed as income in this bankruptcy case. A true and correct copy of Debtor's testimony regarding his income is included on pages 21 to 23 of his deposition transcript which is attached to the Ohio Plaintiffs' Objection to the Disclosure Statement (the "**Disclosure Statement Objection**") filed on December 13, 2019 as Exhibit "B" (Docket No. 120, Exhibit "B").

## PROCEDURAL BACKGROUND

13.     On September 29, 2019, Debtor filed his initial Chapter 11 Plan (Docket No. 79) (the "**Plan**"), and the corresponding Disclosure Statement (Docket No. 80) (the "**Disclosure Statement**").

14.     The Disclosure Statement Objection generally objected to the Disclosure Statement on the grounds that: (i) the Plan and Disclosure Statement failed to disclose the Debtor's income received from his involvement in a real estate scheme with Build Realty, Inc. ("**Build**"); (ii) the Plan and Disclosure Statement failed to disclose in any way the existence of the suit pending against Debtor in the District Court for the Southern District of Ohio and the claims asserted against Debtor therein which are the result of Debtor's involvement in the real estate scheme with Build; and (iii) Debtor failed to provide all of the putative class members, except for the Ohio Plaintiffs, with any notice of the filing of the Plan and Disclosure Statement, and thus the Plan as

4

proposed was unconfirmable as it did not comply with the good faith requirements of 11 U.S.C. § 1129(a)(3), and did not meet the requirements of 11 U.S.C. § 1129(a)(2).

15.     On January 17, 2020, Debtor filed an Amended Disclosure Statement (the "**Amended Disclosure Statement**") (Docket No. 134).

16.     The Amended Disclosure Statement as filed did not resolve all of the issues raised in the Ohio Plaintiffs' Objection to the Disclosure Statement, and thus on February 10, 2020 the Ohio Plaintiffs filed a Supplemental Objection to the Amended Disclosure Statement (Docket No. 152), which again asserted that the Amended Disclosure should not be approved because the Plan still was not confirmable as it did not meet the requirements of 11 U.S.C. §§ 1129(a)(2) and (a)(3), as the Debtor has not complied with the applicable provisions of Title 11, and has not proposed the Plan in good faith

17.     On February 27, 2020 Debtor filed an Amended Plan of Reorganization (the "**Amended Plan**") (Docket No. 168), along with the corresponding Disclosure Statement for Amended Plan of Reorganization (the "**Second Amended Disclosure Statement**") (Docket No. 169).

## OBJECTION

### *(a) The Amended Plan and the Proponent of the Amended Plan Failed to Comply with the Applicable Provisions of the Bankruptcy Code.*

18.     11 U.S.C. § 1129(a)(1) and (2) require that, a court shall only confirm a Chapter 11 plan so long as (1) "[t]he plan complies with the applicable provisions of this title " and (2) "[t]he proponent of the plan complies with the applicable provisions of this title."

19.     In determining whether a Chapter 11 Plan is confirmable, the Bankruptcy Courts have an affirmative duty to evaluate the facts to determine whether the criteria set forth in 11

U.S.C. § 1129 are met, even in the absence of any objections. *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1299-1300 n.4 (11th Cir. 2001).

*(i) Debtor's Failure to Comply with 11 U.S.C. § 342(a).*

20.     As stated above, Debtor failed to timely notify the Ohio Plaintiffs, as well as the potential class members in the District Court Case of his bankruptcy filing, and concealed the income received from his involvement with Build, as well as his involvement in the District Court Case, from this Court.

21.     11 U.S.C. § 342(a) required that "[t]here shall be given such notice as is appropriate, including notice to any holder of a community claim, of an order for relief in a case under this title." 11 U.S.C. § 301 further provides that "[t]he commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter."

22.     As a result, in concealing his involvement in the District Court Case from this Court and failing to notify all known creditors who hold claims against the Debtor, Debtor violated 11 U.S.C. § 342(a), and thus the Amended Plan cannot be confirmed pursuant to 11 U.S.C. § 1129(a)(2).

*(ii) Plan's Failure to Comply with the Absolute Priority Rule of 11 U.S.C. § 1129(b)*

23.     Furthermore, the Debtor has testified under oath that he has received hundreds of thousands of dollars from his involvement with Build, and has concealed this income from this Court.

24.     11 U.S.C. § 1129(b)(1) provides that a Court shall confirm a cramdown plan so long as "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."

6

25.     In determining whether a cramdown Chapter 11 plan is fair and equitable, and thus able to be confirmed, 11 U.S.C. § 1129(b)(2)(B)(ii) provides that with respect to any impaired class of unsecured claims "the condition that a plan be fair and equitable with respect to a class includes the following requirements:…(II) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property." As a result, in order for the absolute priority rule to be satisfied, "every unsecured creditor must be paid in full before the debtor can retain 'any property' under a plan." *See e.g., Ice House Am., LLC v. Cardin*, 751 F.3d 734, 737 (6th Cir. App. 2014).

26.     The Amended Plan provides for seven different classes of claims, with liquidated unsecured claims being class 5, unliquidated unsecured claims being class 6, and the Debtor's equity interest being class 7. (Docket No. 168, Page 8 of 30).

27.     The Amended Plan further provides that classes 5 and 6 are impaired and, and thus in order for the Amended Plan to be confirmable, the Debtor cannot be allowed to retain any non-exempt property under the Amended Plan.

28.     Due to the Debtor's concealment of income and assets in this case, the proposed contributions to be made by Debtor under the Amended Plan do not include all non-exempt assets of the Debtor, and thus allows Debtor to retain his concealed income while members of classes 5 and 6 are not paid in full. Such a situation violates the Absolute Priority Rule contained in 11 U.S.C. § 1129(b), and thus under 11 U.S.C. § 1129(a)(1), the Amended Plan does not comply with the applicable provisions of the bankruptcy code, and thus is unconfirmable.

*(iii) Debtor's Failure to Comply with 11 U.S.C. § 521.*

29.     Pursuant to 11 U.S.C. § 521(a), a debtor has a duty to file with the Bankruptcy Court "(i) a schedule of assets and liabilities; [and] (ii) a schedule of current income and current expenditures."

30.     Bankruptcy Courts have consistently held that a debtor's duty to schedule all assets and current income is a continuing duty, and that a debtor shall amend his or her schedules to disclose any assets or income which were not initially disclosed to the Bankruptcy Court. *See Robinson v. Tyson Foods, Inc.,* 595, F.3d 1269, 1274 (11th Cir. App. 2010) ("A debtor seeking shelter under the bankruptcy laws has a statutory duty to disclose all assets, or potential assets to the bankruptcy court. 11 U.S.C. §§ 521(1), 541(a)(7). "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather the debtor must amend [her] financial statements if circumstances change." *Burnes*, 291 F.3d at 1286. This duty applies to proceedings under Chapter 13 and Chapter 7 alike.")

31.     As discussed above, Debtor has failed to schedule the hundreds of thousands of dollars which he received from his involvement with Build in his Schedules as initially filed with this Court, or in any amendment thereto.

32. The closest that the Debtor has come to an actual disclosure of the income he received from his involvement with Build is contained in the Amended Disclosure Statement, in which Debtor claims to have received $120,400.00 in consulting income for the year of 2019, $70,400.00 of which was received from Build. The Debtor provides no further explanation of what services he has provided for Build, or whether he has received hundreds of thousands of dollars from his involvement with Build in the previous years, and instead simply states that Build no longer

8

requires his services, and that he expects his consulting income to be lower in the coming months. (Docket No. 169, Pages 10-11).

33.     In addition to the Debtor's failure to disclose substantial income which he received from his involvement with Build, Debtor further failed to disclose in his Statement of Financial Affairs certain transfers of assets, including but not limited to monthly transfers of $15,000.00 per month which the Debtor makes to his wife. Debtor not only omitted these monthly transfers from his schedules and Statement of Financial Affairs, but also made no mention of the transfers to his wife in his Disclosure Statement (Docket No. 80), or Amended Disclosure Statement (Docket No. 134), and instead includes an avoidable transfer analysis in his Amended Disclosure Statement which simply states that "[a]s reflected in the Debtor's statement of financial affairs, there were no transfers that would be recoverable as preferential or otherwise voidable transfers." (Docket No. 134, Page 22 of 35).

34.     The Debtor did not amend his Statement of Financial Affairs accord to disclose the monthly transfers to his wife as required by 11 U.S.C. § 521, and instead simply included a statement about these transfers in his Second Amended Disclosure Statement only after the issue of these transfers were raised in the Objection to Debtor's Amended Disclosure Statement filed on February 7, 2020 (Docket No. 143).

35.     The Debtor's actions in concealing his monthly transfers to his wife, and then mentioning them in his Second Amended Disclosure Statement only after they were exposed to the Court by creditors cannot meet the continuing disclosure requirement of 11 U.S.C. § 521(a).

36.     The Debtor's failure to disclose to this Court the substantial income which he has received from his involvement with Build, and the monthly transfers he has been making to his

wife, constitutes a violation of 11 U.S.C. § 521(a). Furthermore, the Debtor's continued failure to amend his schedules to disclose the income he received from his involvement with Build or his transfers to his wife, and his repeated evasiveness and vagueness regarding this income in subsequent filings such as the Amended Disclosure Statement, and evasive and baseless objections to discovery propounded by the Ohio Plaintiffs, evidence Debtor's failure to comply with 11 U.S.C. § 521(a). Despite Debtor having received millions of dollars as a result of a securities fraud; Debtor reported no income and lists virtually no non-exempt assts. Creditors' efforts to investigate have been hindered by the delays of Debtor and Debtor's conduct.

37.     Because the Debtor has failed to comply with the requirements of 11 U.S.C. § 521(a), the Amended Plan is unconfirmable under 11 U.S.C. § 1129(a)(2).

*(vi) The Plan is not Feasible Under 11 U.S.C. § 1129(a)(11).*

38.     11 U.S.C. § 1129(a)(11) provides that a Court should only confirm a plan if "Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan."

39.     Section 10.09 of the Amended Plan provides that during the term of the Amended Plan, any holders of non-dischargeable claims shall be enjoined from pursuing any collection activities against the Debtor, the Estate, and the assets thereof unless permitted by final order of this Court, and that upon the expiration of the plan period this injunction will no longer be in effect. (Docket No. 168, Page 24 of 30).

40.     In the event that the plaintiffs in the multiple fraud suits against Debtor, including the Ohio Plaintiffs, are successful on their claims, their claims would likely be non-dischargeable, and would likely be in the millions of dollars.

41.    In light of the circumstances in this case and the litany of fraud claims asserted against the Debtor in multiple courts, this provision has clearly been added to the Amended Plan in anticipation of the Debtor being found liable on some or all of the claims asserted against him, and to deny any such creditors holding these non-dischargeable claims from proceeding on their rights to collect against the Debtor and thus causing the Amended Plan to fail. The sole purpose of this proposed injunction is to prop up an otherwise unfeasible plan, and to again attempt to manipulate the bankruptcy system by preventing holders of non-dischargeable claims which are based upon the alleged fraudulent acts of the Debtor from collecting on such claims.

42.    Debtor provides no explanation for why such an injunction is necessary, and cites no sources showing that such a temporary injunction is permissible. Debtor has maintained throughout the entirety of this case that the fraud claims asserted against him are without merit. If the Debtor was expecting to succeed in defending against these fraud claims, then it would seem that this provision is entirely unnecessary.

43.    The Debtor's Plan contains improper provisions that use this Bankruptcy Case to shield himself from non-dischargeable liability. As a result, the Amended Plan should not be confirmed with the temporary injunction provision included, and absent this provision, the Amended Plan is not feasible under 11 U.S.C. § 1129(a)(11).

*(b) The Plan was Not Proposed in Good Faith.*

44.    In addition to the requirements set forth under 11 U.S.C. § 1129(a)(2), 11 U.S.C. § 1129(a)(3) further requires that in order for a Chapter 11 plan to be confirmable, it must have "been proposed in good faith and not by any means forbidden by law."

45.     In determining whether a Chapter 11 plan of reorganization is proposed in good faith, Bankruptcy Courts consider the totality of the circumstances surrounding the Debtor's filing of the petition, and the proposal of the plan. *See, In re McCormick*, 49 F. 3d 1524, 1526 (11th Cir. App. 1995) ("courts must look to the totality of the circumstances surrounding the plan"); *In re Georgetown Ltd. Pshp.*, 209 B.R. 763, 768 (Bankr. N.D. Ga. 1997) ("the court must examine good faith at two levels (1) the filing of the petition and (2) the proposal of a plan of reorganization").

46.     Good faith for the purposes of 11 U.S.C. § 1129(a)(3) is not defined in the bankruptcy code, though as the Bankruptcy Court for the Northern District of Georgia has stated, "[t]wo elements seem inherent in "good faith" with respect to the debtor's responsibility in proposing a plan, to wit: (1) honesty in purpose, and (2) full disclosure of relevant facts." *In re Wiggles*, 7 B.R. 373, 380 (Bankr. N.D. Ga. 1980).

47.     The totality of the circumstances surrounding Debtor's Bankruptcy Case clearly show that Debtor has used the plan process to delay so that applicable statutes of limitation may run, and to frustrate the attempts of the Ohio Plaintiffs and the potential class members in the District Court Case to recover on their non-dischargeable claims.

48.     Debtor only notified the Ohio Plaintiffs of this bankruptcy case only after it became clear that he would not be able to resolve the District Court Case, and concealed hundreds of thousands of dollars received from his involvement in the scheme carried out by Debtor through Build, and the other Defendants in the District Court Case, from this Court and creditors.

49.     In addition to concealing income from the Court, Debtor also failed to list any information regarding the litigation or claims asserted against him in the District Court Case in an attempt to conceal his involvement in the suit from the Court.

50.     The Debtor's schedules and Disclosure Statement are also completely devoid of any disclosure regarding potential fraudulent transfers or preferences.  There is no explanation of what happened to the nearly $1,000,000.00 in income that Debtor received and spent or transferred in the 2 years prior to the Petition Date.

51.     As a result of the Debtor's deliberate failure to notify the Ohio Plaintiffs, and concealment of income and potential avoidable transfers, Debtor has spent well in excess of a $100,000.00 defending against the claims of fraud victims, which reduces the funds available to be distributed to creditors in this Bankruptcy Case. The Debtor's conduct in this Bankruptcy Case and in proposing the Plan is a deliberate attempt in bad faith to delay the District Court Case and make it impossible for the fraud victims to recover on their claims.

52.     As of the filing of this Objection there is a little over 7 months remaining for preference and fraudulent conveyance claims to be initiated by the bankruptcy estate. The Debtor has deliberately failed to make the affirmative and mandatory disclosures required by the Bankruptcy Code and Rules, and failed to provide initial notice of the case to the Ohio Plaintiffs. The Debtor, through its counsel, has furthered indicated it will be objecting to third party discovery requests to be propounded by Ohio Plaintiffs.

53.     Furthermore, on April 14, 2020 the Ohio Plaintiffs served Debtor with their First Interrogatories, Request for Admissions, and Request for Production of Documents (the "**Request**"). In the Request, the Ohio Plaintiffs sough information relevant to this case and the Debtor's lack of required disclosures, including but not limiting to requesting that the Debtor provide information on:

(i)      The owners, members, shareholders, and officers for GS Mining Company, LLC, and GT Financial, LLC,;

(ii)     The identity of the party or parties responsible for paying and/or reimbursing Debtor's legal fees for the District Court Case;

(iii)    The total amount of money Debtor has earned relative to his relationship with Build, *i.e.*, the total sums of monies Debtor has been paid under the Build Scheme (as defined in the Complaint filed in the District Court Case), or arising from Debtor's ownership interest in Build or any of the Build Companies, and a yearly breakdown of this income by year for 2017, 2018, and 2019;

(iv)    Any interest or stake that Debtor has in GS Mining Company, LLC, personally, or that any other entity in which Debtor is an owner, member, shareholder, officer or agent has in GS Mining Company, LLC;

(v)     Whether the Debtor's statements in his 2018 deposition that he gets "paid $800 for every house closing that occurs", and that he received "somewhere in the neighborhood of 250 or $300,000" from his involvement with Build, are true, and to explain any reason as to why those payments and accompanying income were not identified and disclosed in the Debtor's bankruptcy schedules in this case.

54.    In the Debtor's response to the Request, Debtor claims that he "does not know the answer" to the interrogatories identified in sections (i) and (iv) above, despite the Debtor listing himself as the CEO of GS Mining Company, LLC, and holding shares in this company in his schedules. It is unreasonable to believe that the Debtor, in his role as the CEO of GS Mining Company, LLC, is completely unaware of any of the owners, members, shareholders, or officers

14

of the company for which he serves as the CEO, or that he forgot his scheduled interest in this company when responding to the Request.

55.     In addition, the Debtor claimed in his response to the Request that he "has not incurred any legal fees…and there is no third-party responsible that Debtor is aware of" in response to the interrogatory identified in section (ii) above. Despite this response, the Debtor states in the Disclosure Statement for the Amended Plan that by the end of December 2018, Debtor had spent over $250,000.00 on his legal defense, and claims that high legal expenses were the reason Debtor was forced to file this Bankruptcy Case, stating that "Were it not for the burdens and potential threats of litigation, he would not have needed bankruptcy protection." (Docket No. 169, Page 7 of 43). The Debtor has filed multiple pleadings and participated heavily in defending the District Court Case, and thus it seems beyond belief that he somehow has not incurred any legal expenses in the District Court Case whatsoever.

56.     Finally, the Debtor objected to the interrogatories identified in sections (iii) and (v) above, and claimed that "all of his income has been disclosed in this Bankruptcy Case", again avoiding the issue of the amount of income he received from Build.

57.     In addition to the Debtor's lack of good faith in responding to the interrogatories set forth in the Request, the Request also requested the Debtor produce certain documents in his custody, possession, or control, including but not limited to: (i) Documents evidencing the Debtor's income from 2013 to present; (ii) Documents and/or communications involving or mentioning any investor in the Build Scheme; (iii) Any documents, including communications, in which Debtor is identified as an owner, member, shareholder, agent, or officer of Build Realty, any of the Build Companies, and/or GS Mining Company, LLC.

15

58.     The Debtor produced no documents whatsoever in response to the Request. Due to the Debtor's general lack of good faith disclosure in his response to the Request, the Ohio Plaintiffs are now forced to incur the additional delay and expenses to resolve this discovery dispute with Debtor over what should have been a simple discovery request.

59.     The Ohio Plaintiffs submit that this is all part of a deliberate bad-faith strategy of the Debtor to avoid disclosure of assets and transfer and delay or prevent discovery so that applicable statutes of limitation may expire. To compound this the proposed plan contains a five-year injunction against any non-dischargeable claims, which is addressed in further detail below.

60.     The net effect of the Debtor's conduct in this case and in proposing the Plan is to allow the applicable statute of limitation on the estate to expire and render victims unable to recover on their fraud claims.  Such a result would result in the Debtor getting away with his fraudulent conduct and leaving the victims without any adequate remedy.

61.     The victims in the District Court Case had to spend significant resources to point out and establish the Debtor's deliberate omissions from the affirmative disclosure obligations set forth in the Bankruptcy Code, and Debtor should not be permitted to simply amend his plan and obtain a discharge after his deliberate attempts to conceal necessary information from this Court are exposed. Such conduct also makes a mockery of the legal process and the underlying policies of the Bankruptcy Code.

62.     It is clear that the Debtor's actions in this case in concealing the District Court Case and his income, and failing to timely notify the Ohio Plaintiffs, were part of a scheme to delay the District Court Case and retain his income from the Build scam without interference from the Ohio Plaintiffs or his other creditors. There is no conceivable way that this concealment and lack of

notice can be an honest or justifiable mistake. Debtor was the CEO of a public company and has competently used the bankruptcy process to address the claims being asserted against him by defrauded investors. The Debtor was deposed in the Ohio litigation and has filed, through counsel, numerous defensive pleadings. It is clearly unreasonable to contend that Debtor somehow did not realize that he was a target of the Ohio suit, that he had made hundreds of thousands of dollars in additional income from his involvement with Build, or that he was unaware that claims were being asserted against him. In sum the Debtor's Plan was not proposed in good faith and must not be allowed to stand, and the Debtor's amendments to the Plan and Disclosure Statement have not corrected these issues.

63.     Only after the Ohio Plaintiffs filed their objection to the Debtor's initial Disclosure Statement for its lack of disclosure did Debtor address the claims asserted against him in the District Court Case. Specifically, Debtor added a provision to the Amended Plan and Second Amended Disclosure statement which provides that if the Ohio Plaintiffs are successful in proving their fraud-based claims against the Debtor, that such claims would likely be non-dischargeable, and that the Debtor plans to establish a trust to hold assets to fund the potential distributions to these plaintiffs and other unliquidated claim holders (the "**Unliquidated Claims Trust**").

64.     On its face, Debtor's proposed Unliquidated Claims Trust may seem like a good faith effort to deal with the claims asserted against Debtor in the District Court Case, though upon inspecting the specific terms of the Amended Plan, Debtor proposes to pay a projected minimum of only $2,000.00 per month for sixty (60) months. When considering that the claims asserted in the District Court case alone are in the millions of dollars, and that the Debtor receives over $240,000.00 a year in income exclusive of the hundreds of thousands of dollars which he received

from his involvement with Build, which Debtor now claims is uncertain, a proposed minimum payment of $120,000.00 to satisfy all potential claims against the Debtor in all suits currently pending against him is woefully inadequate, and clearly was proposed to limit the Debtor's potential liability on the claims asserted against him in the District Court Case. As a point of comparison, the Debtor incurred more in legal fees in 2019 than he is proposing to pay to all unliquidated claims holders over a five year period. This litigate at all costs strategy is theepitome of bad faith.

65.    In addition to the minimum proposed payments the Debtor plans to contribute to the Unliquidated Claims Trust, Debtor's Amended Plan further proposes to shield the Debtor from liability to creditors in the District Court Case through the proposed injunction contained in Section 10.02 of the Amended Plan. Debtor's proposed injunction is not proposed in good faith to make a distribution to holders of non-dischargeable claims, but instead is being proposed as a delay tactic to buy the Debtor time before having to make any distributions on account of the claims asserted against him in the District Court Case. Debtor clearly did not have honesty in purpose in proposing such an injunction, and considering the Debtor's age and admitted health concerns, this injunction appears to be a tactic for Debtor to avoid liability to the creditors in the District Court Case for the remainder of his life, in effect denying the claimants in the District Court Case any chance to recover from Debtor on their claims.

66.    Finally, the Amended Plan further provides for a full release of all of the officers, directors, employees, consultants, agents, financial advisors, attorneys, and other representatives of the Debtor. If the Amended Plan is confirmed, such a release would bind the U.S. Trustee in this Bankruptcy Case, and would not allow them to investigate or pursue any potential undisclosed

18

transfers of the Debtor, or to bring a claim for the Debtor's failure to disclose his full income and all assets to this Court. Such a provision is overly broad, and in effect appears to be an attempt by the Debtor to utilize the Bankruptcy system as a shield from liability to his creditors, while at the same time attempting to avoid any claims which may be brought against him in this Bankruptcy Case, and is yet another example of the Debtor's bad faith in proposing the Amended Plan. Such a broad release is not proposed in good faith by the Debtor, and should not be confirmed by this Court.

67.    As a result, from the totality of the circumstances surrounding the Debtor's conduct in this bankruptcy case, including the timing of the filing of this case, the lack of notice to the Ohio Plaintiffs, the concealment of income and litigation from this Court, the minimum proposed payments to be made to the Unliquidated Claims Trust, and the injunction against creditors holding non-dischargeable claims, it is clear that the Debtor did not have honesty in purpose, or make a full disclosure of relevant facts when filing this Bankruptcy Case and proposing the Plan and Amended Plan. As a result, the Plan cannot comply with 11 U.S.C. § 1129(a)(3) and should not be confirmed.

**RESERVATION OF RIGHTS**

68.    The Ohio Plaintiffs expressly reserve all rights to object to confirmation of the Amended Plan, or any modification thereto, on any and all grounds, whether or not set forth herein, and to suggest additional or different language than set forth herein to resolve any objection thereto.

WHEREFORE, the Ohio Plaintiffs request that the Court: (i) deny confirmation of the proposed Amended Plan, or in the event the proposed Amended Plan is confirmed, the Court

require as a condition to confirmation that the Amended Plan be modified, by plan modification or through the order confirming same, such that the objections raised herein are addressed and resolved, and (ii) grant such other and further relief as is just and proper.

Respectfully submitted this 25th day of June, 2020.

LAMBERTH, CIFELLI,
ELLIS & NASON, P.A.
*Counsel for Compound Property Management, LLC,*
*Leone1, LLC, and R & G Cincy Investments, LLC*

By: */s/ Gregory D. Ellis*
Gregory D. Ellis
Georgia Bar No. 245310
gellis@lcenlaw.com

6000 Lake Forrest Drive, N.W., Ste. 435
Atlanta, GA 30328
(404) 262-7373

## CERTIFICATE OF SERVICE

This is to certify that I have on this day electronically filed the foregoing Objection of Compound Property Management, LLC,  Leone1, LLC, And R&G Cincy Investments, LLC to Confirmation of Chapter 11 Plan, using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

Benjamin Keck
bkeck@rlklawfirm.com;
mwinokur@rlklawfirm.com;
swenger@rlklawfirm.com;
csmith@rlklawfirm.com;
dlamonte@rlklawfirm.com

David S. Klein
dklein@rlklawfirm.com;
swenger@rlklawfirm.com;
yalamin@rlklawfirm.com;
R71213@notify.bestcase.com;
csmith@rlklawfirm.com;
dlamonte@rlklawfirm.com;
1030641420@filings.docketbird.com

William A. Rountree
wrountree@rlklawfirm.com,
swenger@rlklawfirm.com;
yalamin@rlklawfirm.com;
R71213@notify.bestcase.com;
csmith@rlklawfirm.com;
dlamonte@rlklawfirm.com

Samantha L. Tzoberi
swenger@rlklawfirm.com;
yalamin@rlklawfirm.com;
R71213@notify.bestcase.com

David S. Weidenbaum
david.s.weidenbaum@usdoj.gov

Bradley S. Wolff
brad.wolff@swiftcurrie.com;
bradwolff@outlook.com

Craig B. Lefkoff
clefkoff@lrglaw.com

Thomas Wayne Dworschak
thomas.w.dworschak@usdoj.gov;
ltctommyd@aol.com

Griffin B. Bell
gbb@gb3pc.com;
dts@gb3pc.com;
admin@gb3pc.com

Phillip J. Ashfield
Phillip.Ashfield@stinson.com;
bonnie.heidtke@stinson.com

I further certify that on this day I caused a copy of the foregoing Objection of Compound Property Management, LLC,  Leone1, LLC, And R&G Cincy Investments, LLC to Confirmation of Chapter 11 Plan to be served via United States First Class Mail, with adequate postage affixed thereto, to the following parties set forth below, at the address shown for each:

> Stephen David King
> 450 Glenmont Ct.
> Atlanta, GA 30350

Dated: June 25, 2020.

> /s/ Gregory D. Ellis
> Gregory D. Ellis
> Georgia Bar No. 245310
> GEllis@lcenlaw.com

6000 Lake Forrest Drive, N.W., Ste. 435
Atlanta, GA 30328
(404) 262-7373